## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JOE LOUIS KELLEY                                                    PETITIONER
ADC #084474

V.                                  NO. 5:13CV00161 JLH/JTR

RAY HOBBS, Director                                                RESPONDENT
Arkansas Department of Correction

## ORDER

On May 29, 2013, Petitioner, Joe Louis Kelley ("Kelley"), initiated this § 2254

habeas action. In his Petition (*Doc. #2)*, he asserts that, on January 19, 2005, he began

serving an eight-year federal sentence for being a "felon in possession of

ammunition." According to Kelley, during his eight years in the Bureau of Prisons

("BOP"), he completed and fully discharged: (1) a concurrent five-year sentence for

committing a terroristic act imposed on September 24, 2004 in Pulaski County Fourth

Division Circuit Court;[1] and (2) a concurrent five-year sentence for forgery imposed

_____

[1]Kelley's eight-year federal sentence was imposed on January 19, 2005, almost
four months *after* the imposition of his five-year terroristic act sentence.
    On March 1, 2012, the Arkansas Supreme Court ruled in Kelley's favor on a
Petition for Declaratory Judgment and Writ of Mandamus challenging the validity of the
trial court's September 24, 2004 Judgment and Commitment Order, which specified that
his terroristic act sentence ran *consecutive* to his not yet imposed federal sentence. *See*
*Kelley v. Norris*, 2012 Ark. 86. The Court ruled that both of Kelley's state sentences ran
*concurrently* with each other and *concurrently* with the eight-year federal sentence
imposed on January 19, 2005.

-1-

on February 10, 2005 in Pulaski County Second Division Circuit Court.

Thus, Kelley asserts that, after he completed serving his federal sentence, on July 12, 2012, the BOP should have released him to the free world. Instead, it released him to the custody of the Arkansas Department of Correction ("ADC") to complete serving the time he allegedly still owed on his terroristic act sentence. According to Kelley, his confinement in the ADC, on and after July 12, 2012, is a violation of his constitutional rights and requires this Court to grant a writ of habeas corpus.

In his Response to the Petition, Respondent does *not* address the merits of Kelley's argument that the ADC has improperly failed to credit his time in the BOP against his concurrent state sentences. Instead, Respondent argues that the Court is barred from reaching and deciding the merits of that issue based on the statute of limitations, procedural default, and lack of subject matter jurisdiction. (*Doc. #7*, at 6-10.)

It appears indisputable that Kelley served and completed his federal sentence first and never served a single day in the ADC prior to July 12, 2012. In *Kelley v. Norris*, 2012 Ark. 86, the Arkansas Supreme Court held that both of Kelley's five-year state court sentences ran *concurrently* with each other *and* with his eight-year federal sentence, beginning on February 10, 2005. Thus, *if* the facts surrounding the imposition and service of Kelley's state and federal sentence are as the Court believes

them to be, there appears to be a strong legal basis for his claim that he *fully discharged* both of his *concurrent* state sentences during his eight years of incarceration in the BOP.[2]

Before the Court can decide the merits of Kelley's claims and Respondent's defenses, it must know the facts concerning when, where and how Kelley served his sentences. While all of those facts appear to be *indisputable*, during the protracted mandamus proceedings before the Arkansas Supreme Court, counsel for both sides *repeatedly* obfuscated and misstated those facts. As a result, the Arkansas Supreme Court ultimately ordered the ADC to recalculate the time Kelley owed on his state

_____

[2]"Concurrent sentences" are universally understood to mean "served simultaneously." *Black's Law Dictionary* (9th ed. 2009). *See Kelley v. Washington*, 843 S.W.2d 797, 798, 800 (Ark. 1992) (stating that a defendant's concurrent state and federal sentences were "being served simultaneously" while he was in a federal institution, "so that a day served in the federal institution would also reduce his state sentences by a day"; parole eligibility on the concurrent state sentence was appropriately calculated as if defendant "was physically present" in the ADC); *Ellis v. State*, 703 S.W.2d 452, 453-54 (Ark. 1986) (stating that, if a defendant is transferred to a federal facility to serve his concurrent state and federal sentences as set forth in his plea agreement, "he surely will receive credit for time served there on his Arkansas sentence"); *see also Harper v. State*, 865 S.W.2d 647, 648 (Ark. 1993) (holding that, after defendant completed serving a federal sentence, the state was authorized to "reclaim" him to serve "the balance of his state sentence," in part because there was no "circuit court order that the state sentence should be served concurrently with the federal sentence"); *Santana v. State*, 1995 WL 379981, *2 (Ark. Sup. Ct. June 19, 1995) (holding "[a]s in *Ellis*, ... should the appellant begin serving time in federal custody, his state sentence will run concurrently as ordered by his judgment and commitment order"); *Freeman v. State*, 1986 WL 13676, *1 (Ark. Sup. Ct. Dec. 8, 1986) (holding that, should federal authorities accept the defendant into federal prison to serve his state sentence concurrently with his federal sentence, "appellant will surely receive credit for time served on his Arkansas sentence").

terroristic act sentence *based on facts that are demonstrably untrue*.

As a first order of business, counsel for both sides must stipulate to the *indisputable facts* surrounding:

(1)    Kelley's custodial status during his incarceration in the Pulaski County Detention Center ("PCDC") between April 5, 2004, the date he initially entered that facility on the federal charge, and March 2, 2005, the date he was transferred from the PCDC to BOP custody; and

(2)    The order in which Kelley *actually served* his federal and state sentences.

These facts are all black and white. Counsel should have properly developed and stipulated to them when Kelley first raised these sentencing issues in the state mandamus proceedings. Their failure to do so has dramatically complicated the resolution of a simple legal question: During the eight years Kelley was incarcerated *first* in the BOP, did he fully discharge his two five-year state sentences, which unquestionably began running *concurrently* with each other *and* with his federal sentence in early 2005? It has also left counsel with much to explain about how and why these crucially important facts were *repeatedly* misrepresented to the Arkansas Supreme Court.

The first two sections of this Order state the *putative indisputable facts* relevant to deciding whether Kelley *fully discharged* both of his concurrent five-year state sentences during the eight years he was incarcerated in the BOP. If the answer to that

question is yes, then Kelley has a strong argument that his incarceration in the ADC, on and after July 12, 2012, is a violation of his rights under the Fifth and Fourteenth Amendments. The Court then must decide whether the defenses raised by Respondent bar it from granting Kelley habeas relief.

On June 23, 2014, the Court will conduct a hearing, during which counsel will be asked to stipulate to the putative facts set forth in Sections I and II of this Order. If counsel believes any of those putative facts are *incorrect*, they must provide the Court with specific documents or other evidence to support their position as to the correct facts.

Once the attorneys have stipulated to all of the relevant facts, the Court will ask them to respond to the questions posed in Section III of this Order. The Court will then allow each side to make arguments in support of their respective legal positions.

### I.
### Putative Undisputed Facts
### Establishing Kelley's Custodial Status in the PCDC
### Between April 5, 2004 and March 2, 2005

1.      On April 5, 2004, Kelley was arrested by ATF agents on an indictment charging him with being a felon in possession of ammunition. A copy of the federal arrest warrant, marked Ex. A, is attached to this Order. *See United States v. Kelley*, E.D. Ark. No. 4:04-cr-00066-SWW-1, *docs. #2, #3, #9.* At the time of his arrest,

Kelley was free on state bond for allegedly committing a terroristic act. (*See* Resp't Ex. J, at ADD52-53.) This state charge was pending in Pulaski County Circuit Court (Fourth Division).[3]

2.      Later on April 5, 2004, Kelley appeared in the United States District Court for the Eastern District of Arkansas, where he entered a plea of not guilty to the charge in the indictment. The Government moved to have Kelley detained until the final resolution of his federal criminal case. *United States v. Kelley*, E.D. Ark. No. 4:04-cr-00066-SWW-1, *docs. #4, #7.*

3.      Kelley was transported from the federal courthouse to the PCDC to await his detention hearing. As of April 5, 2004, Kelley's incarceration status in the PCDC was as a "federal pretrial detainee."

4.      On April 12, 2004, this Court conducted a detention hearing and, after hearing evidence, ordered Kelley to be detained in the PCDC until the final resolution of the federal charge. *Id., docs. #19, #20.* A copy of the Order of Detention, marked Ex. B, is attached to this Order.

5.      On September 21, 2004, a federal jury convicted Kelley of being a felon in possession of ammunition. *Id., docs. #38, #39.*

---

[3]This Court has electronically accessed the Pulaski County Circuit Court docket sheets, in Case No. CR2004-487 (Fourth Division) and Case No. CR2004-4380 (Second Division), to confirm the facts relevant to those state court proceedings.

6.      On October 22, 2004, Kelley was charged in Pulaski County Circuit Court (Second Division) with multiple counts of forgery.

7.      The United States Marshals Service ("USMS") maintains a prisoner log documenting the incarceration status and movement of all federal pretrial detainees and federal prisoners held in the PCDC. A copy of that log, marked Ex. C, is attached to this Order.[4]

8.      According to the USMS log, when Kelley was required to appear in Pulaski County Circuit Court on the two pending state charges, he was transferred temporarily to the custody of the Pulaski County Sheriff, pursuant to a state writ of habeas corpus *ad prosequendum*. After his state court appearances, he was returned to federal custody in the PCDC. *This log establishes that, throughout Kelley's incarceration in the PCDC, between April 5, 2004 and March 2, 2005, he was a federal prisoner in primary federal custody.*[5]

---

[4]This log reflects two short intervals of time that Kelley was incarcerated in the Tensas Parish and West Carroll Parish Detention Facilities located in north Louisiana. The USMS has contracts with both of those facilities, and prisoners like Kelley are sometimes transferred there, usually when the PCDC begins to approach its holding capacity. During his time in both of those Louisiana detention facilities, he was a federal prisoner, awaiting the final disposition of the charges pending against him in Arkansas.

[5]*See Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) (as between state and federal sovereigns, the first sovereign to take physical custody of, or arrest, a defendant retains "primary jurisdiction" until releasing that jurisdiction); *United States v. Cole*, 416 F.3d 894, 896-97 (8th Cir. 2005) ("Primary jurisdiction continues until the first sovereign relinquishes its priority," generally in one of four ways: release on bail, dismissal of

9.      On September 24, 2004, Kelley pled guilty and was sentenced to five years on the state terroristic act charge.

10.     On January 19, 2005, United States District Judge Susan Webber Wright sentenced Kelley to eight years of incarceration for being a felon in possession of ammunition.

11.     On February 10, 2005, Kelley pled guilty and was sentenced to five years on the state forgery charge.

12.     The USMS log establishes that: (a) on March 2, 2005, federal agents transported Kelley directly from the PCDC to the BOP's West Tennessee Detention Facility, where he continued serving his eight-year federal sentence, imposed on January 19, 2005; and (b) on April 4, 2005, he was airlifted from the BOP's West Tennessee Detention Facility to the BOP's United States Penitentiary in Beaumont, Texas.

13.     According to the BOP's Sentencing Monitoring Computation Data Sheet, on July 12, 2012, Kelley completed his federal sentence and the BOP released him to the custody of the ADC. A copy of that document, marked Ex. D, is attached to this Order.

14.     *Kelley did not serve a single day in the ADC from April 5, 2004, the date*

charges, parole, or expiration of sentence; primary jurisdiction is not relinquished when a defendant is temporarily "loaned" to another sovereign's jurisdiction to face charges.).

*of his arrest on the federal charge, until he completed his federal sentence on July 12,*

*2012.*

## II.
### Putative Undisputed Facts
### Establishing When, Where and How Kelley's
### State and Federal Sentences Were Imposed and Served

1.      On September 24, 2004, Pulaski County Fourth Division Circuit Judge

John Langston sentenced Kelley to five years in the ADC for committing a terroristic

act. (Resp't Ex. A.) His Judgment and Commitment Order explicitly provided that

Kelley was to serve the sentence *consecutive to his not yet imposed federal sentence*.[6]

After his sentencing, Kelley was returned to federal custody in the PCDC to await

imposition of his federal sentence.

2.      On January 19, 2005, Judge Wright sentenced Kelley to eight years in the

BOP to be served *consecutively* to his five-year state terroristic act sentence. (Resp't

Ex. B.) He was returned to the PCDC, as a federal prisoner, to await the disposition

---

[6]Ark. Code Ann. § 5-4-403(a) *prohibits* a state court judge from imposing a state
sentence consecutive to a yet to be imposed state or federal sentence.

In its March 1, 2012 decision granting Kelley mandamus relief, the Arkansas
Supreme Court cited that statutory language as the basis for its holding that Judge
Langston committed a "void act" in ordering that Kelley's five-year terroristic act
sentence run *consecutively* to the yet to be imposed federal sentence. The legal effect of
the Court's March 1, 2012 decision was to *retroactively convert* the consecutive aspect of
Kelley's five-year state terroristic act sentence to a five-year state sentence that ran
*concurrently* with his eight-year federal sentence, beginning on February 10, 2005.

of the pending state forgery charges.

3.     On February 10, 2005, Kelley pled guilty to multiple counts of forgery in Pulaski County Second Division Circuit Court. (Resp't Ex. C.) Judge Chris Piazza sentenced him to five years in the ADC. The Judgment and Commitment Order *explicitly stated* that the forgery sentence was to run *concurrently* with the previously imposed five-year state terroristic act sentence, but was *silent* on whether the forgery sentence was to run concurrently or consecutively with Kelley's federal sentence.[7]

4.     After imposition of the February 10, 2005 state sentence, Kelley was returned to the PCDC, where he remained in primary federal custody.

5.     On February 10, 2005, the PCDC provided Kelley with a document captioned "Official Memorandum: Pulaski County Detention Facility." It notified Kelley that: (a) "Due to your recent conviction to the Arkansas Department of Correction you are now required to release all personal property to a family member or a friend . . . You must do this prior to your departure to the Arkansas Department of Corrections."; and (b) "Your paper work is being processed by the prosecutor's office. Once it is completed you will be placed on the waiting list." A copy of that

_____

[7]Under Ark. Code Ann. § 5-4-403(b), a state sentence can only run consecutively to a previously imposed state or federal sentence if the Judgment and Commitment Order *explicitly states* that it is to be served "*consecutively.*" This meant, as a matter of law, that Kelley's five-year forgery sentence *ran concurrently* with his federal sentence, beginning on February 10, 2005, the date it was imposed by Judge Piazza.

document, marked Ex. E, is attached to this Order. *After receiving this notice from the PCDC, Kelley was not transferred to the ADC.*

6.    On March 2, 2005, Kelley was transferred from the PCDC to the BOP. Thereafter, he remained continuously in federal prison until he completed serving his eight-year federal sentence on July 12, 2012.

7.    In a letter dated July 20, 2007, Roy Agee, Classification Administrator for the ADC, wrote Kelley in response to "Your Letter." A copy of Agee's letter, marked Ex. F, is attached to this Order. Agee's letter enclosed an "Arkansas Department of Correction Time Computation Card," which is also dated July 20, 2007. A copy of the Time Computation Card, marked Ex. G, is attached to this Order.

8.    The Time Computation Card reflects that Kelley's "Transfer Eligibility Date"[8] on his forgery sentence is November 16, 2005, but only *if* he earns "all good time which can be earned based on your current class." His "Discharge Date" is September 18, 2009, which means he would be released on that date *if* he earned *no good time credit*, and served his full five-year sentence, less the 144 days that Judge Piazza's Judgment and Commitment Order credited to him for the time he spent in the PCDC. The Time Computation Card made it clear that Kelley *might* become eligible

---

[8]Under the Arkansas statutes, an inmate's "transfer eligibility date" is the earliest date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the Department of Community Correction, which may include parole. Ark. Code Ann. §16-93-1202(2), (4), (11) & (12)(A).

for parole as early as November 16, 2005 – *not* that he was *actually paroled* on that date.

9.      Agee's letter and the Time Computation Card are silent as to Kelley's terroristic act sentence.

10.     The Time Computation Card reflects Kelley's "Housing" as "Unknown," and his "Location" as "AR CC Sentences TOS," which means he was serving concurrent Arkansas sentences and had been transferred out of state ("TOS"). Thus, as early as July of 2007, the ADC records department *knew* that Kelley: (1) was under concurrent Arkansas sentences; (2) was *not* in ADC custody; and (3) was in BOP custody in Beaumont, Texas, the address where Agee mailed his July 20, 2007 letter.

11.     On September 11, 2007, ADC Records Supervisor Shelli Maroney wrote Kelley at his BOP address in Beaumont, Texas and advised him that: (a) they had just "discovered" his state terroristic act sentence, which had "not been entered into the [ADC] system"; and (b) because that sentence explicitly ran *consecutively* to his eight-year federal sentence, it would "not begin until the day you are released from the Feds." A copy of Maroney's letter, marked Ex. H, is attached to this Order.

12.     On December 10, 2007, Kelley wrote Maroney and told her that the *consecutive* five-year terroristic act sentence was "*illegal*." A copy of Kelley's letter, marked Ex. I, is attached to this Order.

13.   On January 28, 2008, Maroney wrote Kelley a letter advising him that: (a) she had "called the Feds" and learned that his federal sentence was imposed on January 19, 2005, "*which is after you were sentenced by Pulaski Co on docket 2004-487 to run consecutive to your Federal sentence*" (emphasis added); (b) she "*agree[d] that Pulaski Co can not run their sentence consecutive due to you not being sentenced to the Fed time as of that date*" (emphasis added); (c) she had contacted "Centralized Records" to "*take the steps to correct this*," and Centralized Records was "*in the process of asking Pulaski County to amend their sentence to correct their error*" (emphasis added); and (d) as soon as an "*Amended J&C*" was received, the ADC would "*correct the consecutive sentence*" (emphasis added); and she would send him a Time Computation Card reflecting the correct discharge date on the terroristic act sentence. A copy of Maroney's letter, marked Ex. J, is attached to this Order.

14.   Some time between January 28, 2008 and February 8, 2008, Maroney communicated with "Darnisha," an Assistant Attorney General, about the need to correct the "consecutive" aspect of Kelley's terroristic act sentence, *which Maroney believed was invalid.*

15.   On February 8, 2008, Maroney wrote Kelley to advise him that: (a) she had "turned all the information [on his terroristic act sentence] over to the Arkansas Attorney General's Office"; (b) "[a]ccording to Darnisha, Asst Attorney General in

the State of Arkansas, the prior action stands. Your [terroristic act sentence] is legal and entered correctly"; and (c) "You will be required to return to Arkansas to serve your 5 year sentence in the Arkansas Department of Corrections, that is consecutive to your Federal sentence." A copy of Maroney's February 8, 2008 letter, marked Ex. K, is attached to this Order.

## III.
## Issues Counsel Should Be Prepared to Address
## During the June 23, 2014 Hearing

    A.    <u>Maroney's Efforts to Correct Kelley's Terroristic Act Sentence in January of 2008</u>.

As the Arkansas Supreme Court later made clear in its March 1, 2012 decision, *in every respect, Maroney's January 28, 2008 letter to Kelley was correct*: (a) Judge Langston erred in running Kelley's terroristic act sentence "consecutive due to you [Kelley] not being sentenced to the Fed time as of that date"; (b) the ADC records department correctly began "the process of asking Pulaski County to amend their sentence to correct their error"; and (c) this would require the ADC records department to "correct the consecutive sentence," *i.e.*, change its records to reflect that the terroristic act sentence ran *concurrently* with the federal sentence.

If Maroney had been allowed to fix this *obvious* sentencing error, in January of 2008, ADC records would have reflected that both of Kelley's five-year state

sentences ran concurrently with each other and with his federal sentence, which he had begun serving on January 19, 2005. Under well-established Arkansas case law, this would have meant that Kelley "surely will receive credit for time served there [federal prison] on his [concurrent] Arkansas sentence." *Ellis*, 703 S.W.2d at 453-54. *Accord Santana*, *supra* at *2 (holding "[a]s in *Ellis*, ... should the appellant begin serving time in federal custody, his state sentence will run concurrently as ordered by his judgment and commitment order"); *Freeman*, *supra* at *1 (holding that, should federal authorities accept the defendant into federal prison to serve his state sentence concurrently with his federal sentence, "appellant will surely receive credit for time served on his Arkansas sentence"). This would have meant that Kelley's ADC discharge date, on both of those state sentences, was no later than February 10, 2010. *If* all of this had occurred, as it should have, the BOP would have released Kelley to the free world on July 12, 2012.

Ironically, this did not occur because a lawyer in the Attorney General's Office provided Maroney with an *erroneous legal opinion* about *well-established Arkansas law*, and this prevented Maroney from correcting Kelley's invalid terroristic act sentence on a timely basis.

On September 8, 2009, Respondent's counsel filed a Response to Kelley's *pro se* Petition for Writ of Mandamus, in Jefferson County Circuit Court. (Resp't Ex. H.)

In footnote 1 of that Response, Respondent's counsel *admitted* the following: "Under Ark. Code Ann. § 5-4-403(b), the circuit court [Judge Langston] could sentence Petitioner to a term of imprisonment, however, it could not order his sentence to [be] served consecutively to his federal case because he had not yet been sentenced federally at that time." *This is precisely what Maroney knew and had tried to fix nineteen months earlier!*

**Respondent's counsel should be prepared to explain: (1) how and when the Attorney General's Office discovered "Darnisha's" error and who specifically made that discovery; (2) the date the Attorney General's Office first contacted Maroney, or someone else in the ADC's records department, to advise them that Kelley's ADC records needed to be changed to reflect that he was serving two five-year state sentences that ran *concurrent* with each other and with the federal sentence; and (3) the name of the person in the ADC's records department who *first discovered* Kelley had begun serving his federal sentence *first*, without having ever served a single day in the ADC; the date this discovery was made; what specifically led to this discovery; and the date and name of the person in the Attorney General's Office to whom this information was first conveyed**.

B.  Kelley's Initial § 2254 Habeas Action.

On April 29, 2008, Kelley filed a *pro se* § 2254 habeas action challenging the

way the ADC was crediting his prison time among his state and federal sentences. (Resp't Ex. D.)

On August 13, 2008, Respondent filed a Motion to Dismiss arguing that Kelley had failed to exhaust his available remedies in state court. (Resp't Ex. E.) This Motion *accurately stated* that "Kelley is currently in federal custody serving a sentence of 96 months for being a felon in possession of ammunition." (*Id.* at 1.) It went on to reference his September 24, 2004 terroristic act sentence, and his February 10, 2005 forgery sentence, but *stated nothing* about Kelley having served his state forgery sentence first, before being transferred to BOP custody to begin serving his federal sentence.

Exhibit J to Respondent's Motion to Dismiss contained various ADC records department documents related to Kelley's state court sentences. Page 4 of Exhibit J is a Status Assignment Sheet dated July 28, 2008. A copy of that document, marked Exhibit L, is attached to this Order. This document makes it clear that, as of February 10, 2005, Kelley was scheduled to be transferred out of state ("OOS") (*not* in state custody ["ISC"]) to begin serving an "unknown" federal sentence in the "US Pen." It also reflects that, on February 24, 2005 and April 21, 2005, Kelley was on a "Pulaski County Backup List" awaiting transfer to the ADC. *Nothing* in this document reflects that Kelley was *ever actually transferred* to the ADC to begin serving either of his

state sentences. To the contrary, it reflects that Kelley was serving his federal sentence *first*.

Finally, this document reflects that, *during the time Kelley was serving his federal sentence*, he became eligible for parole on his state forgery sentence on April 25, 2006 – *not* November 16, 2005, the date the ADC records department later used to give Kelley approximately nine months of credit on his terroristic act sentence.[9] Based on the content of this document, the ADC unquestionably acknowledged that, while Kelley was serving his federal sentence in the BOP, he was entitled to receive "day for day credit" on his state forgery sentence, which ran *concurrently* with the federal sentence.

A fair reading of this document makes it clear that Kelley was incarcerated *first* in the BOP – not the ADC. Certainly, *nothing* in this document suggested that Kelley was first incarcerated in the ADC on his forgery sentence and then paroled and transferred to the BOP, on either November 16, 2005 or April 25, 2006, to begin serving his federal sentence.

On February 26, 2009, this Court entered a Memorandum and Order dismissing Kelley's § 2254 habeas Petition, without prejudice, on the ground that, before he

---

[9]If the April 25, 2006 date is correct, even under the ADC's recalculation of his terroristic act sentence, Kelley would have been entitled to fourteen months of credit on his terroristic act sentence – not nine months.

could properly pursue federal habeas relief, he must exhaust his state court remedies by filing a declaratory judgment action and mandamus proceeding in state court challenging the way the state was crediting his prison time among his state and federal sentences. *Kelley v. Norris*, No. 5:08cv00122-JTR (E.D. Ark. Feb. 26, 2009) (Resp't Ex. F).

C.     <u>State Court Mandamus Proceeding</u>.

On July 17, 2009, Kelley filed a *pro se* Petition for Declaratory Judgment and Petition for Writ of Mandamus in Jefferson County Circuit Court. (Resp't Ex. G.) Among other things, Kelley argued that the way the state had run and credited his state and federal sentences was a "direct violation of the Fifth and Fourteenth Amendment of the Constitution of the United States of America." (*Id.* at 6.)

On September 8, 2009, Respondents filed their Response, (Resp't Ex. H), which contains statements of fact that are in *direct conflict with* the facts contained in the ADC documents attached to Respondent's earlier Motion to Dismiss Kelley's § 2254 habeas action. Specifically, Respondent's counsel states the following crucially important facts to be true:

> Although [Kelley's] forgery sentence was to be served concurrently with his terroristic-act sentence, he served his time in the ADC on the forgery [sentence] alone, was then paroled to the BOP [to begin serving his federal sentence], and is now pending his return to the ADC to serve his sentence on the terroristic-act conviction. *See* Petitioner's Exhibit A and B.

-19-

(*Id.* at 2 n.3.)

The Court has carefully reviewed "Petitioner's Exhibit A and B." *Nothing* in

any of those documents supports any of the foregoing facts – none of which are true.[10]

Furthermore, some of the information contained in Exhibit B *directly controverts*

---

[10]Exhibit A consists of the two state Judgment and Commitment Orders, the federal Judgment and Commitment Order, and a short excerpt from the transcript of Kelley's January 19, 2005 federal sentencing in which the Court suggested that Kelley *may* have already begun serving his state terroristic act sentence. *Nothing in those documents comes close to proving that Kelley "served his time in the ADC on the forgery alone, was then paroled to the BOP, and is now pending his return to the ADC to serve his sentence on the terroristic-act conviction."*

The first document in Exhibit B is an "Official Memorandum: Pulaski County Detention Facility" dated "2-10-05." It explains to Kelley that, because of his "recent conviction to the Arkansas Department of Correction you are now required to release all personal property to a family member or a friend. ... You must do this prior to your departure to the Arkansas Department of Corrections." *Nothing in this PCDC document is evidence that, on or after February 10, 2005, Kelley was released from the PCDC to the custody of the ADC, to begin serving his September 24, 2004 or February 10, 2005 state sentence.*

The second document in Exhibit B is the July 20, 2007 letter to Kelley from Roy Agee, Classification Administrator at the ADC, along with the ADC "Time Computation Card." *See* Ex. F and Ex. G to this Order. Together, these documents inform Kelley that, on his forgery sentence, he has a "Transfer Eligibility Date" of "11/16/2005" and a "Discharge Date" of "09/18/2009." Obviously, there is an important distinction between the date a prisoner becomes "eligible for parole" and the date a prisoner is *actually paroled*. If Kelley had, in fact, been paroled on November 16, 2005, the Time Computation Card's "Release Dates" would have reflected "Paroled: 11/16/2005," *not* "Transfer Eligibility Date: 11/16/2005." In the same vein, the Time Computation Card reflects the "Location" where Kelley is incarcerated as "AR CC Sentences TOS." Those abbreviations appear to mean that Kelley has at least two "Arkansas concurrent sentences" and his current "Location" is "Transferred Out of State," *i.e.*, he is currently incarcerated outside the State of Arkansas serving a federal sentence. Similarly, Kelley's "Housing" is listed as "Unknown." *Suffice it to say, nothing in Exhibit B established that, as of July 20, 2007, Kelley had served a single day in the ADC on either of his state sentences, much less that he had been paroled on November 16, 2005 and transferred to BOP custody.*

those facts. Finally, it appears Respondent's counsel either overlooked or ignored page 4 of Exhibit J to Respondent's Motion to Dismiss Kelley's initial habeas action. If she had reviewed that document, and the much different recitation of facts contained in Respondent's Motion to Dismiss, she would have realized that *none* of the purported facts about Kelley serving his state forgery sentence first in the ADC and then being paroled to the BOP to serve his federal sentence (which was ordered to run consecutively to his state terroristic act sentence) were true.

1.    Things Respondent's Counsel Should Be Prepared to Explain.

**Respondent's counsel should be prepared to explain the factual basis for the sentencing chronology provided in her September 8, 2009 Response to Kelley's Petition for Writ of Mandamus filed in Jefferson County Circuit Court and later repeated in Appellee's Brief filed with the Arkansas Supreme Court.[11]**

---

[11]The ADC maintains numerous records that document *everything* that takes place from the time a prisoner is taken into its custody until the time he is released. This long chain of documents includes the following: (1) transport papers documenting the date the ADC assumes physical custody over a prisoner from a county holding facility; (2) documentation establishing the date a prisoner is initially admitted to the Diagnostic Unit for his intake physical; (3) documentation establishing the date he is assigned a work classification; (4) documentation establishing the date he is assigned to one of the ADC's incarceration facilities; (5) documentation establishing the date of his initial parole hearing; (6) documentation establishing the parole panel's actual decision on whether he should be paroled; (7) documentation establishing the actual date a prisoner is paroled; and (8) documentation establishing the date he is transferred to the custody of the BOP to begin serving his federal sentence.

It appears that, before making the crucially important factual misrepresentation to the Arkansas Supreme Court, about the order in which Kelley had served his state and federal sentences, neither Respondent's counsel nor anyone else in the ADC's records

**(*See* Resp't Ex. H, at 2 n.3; Resp't Ex. K, at ARG2 n.2.) She should be prepared**

**to identify all of the ADC documents and the ADC employees she relied on to**

**support her factually erroneous representation to the Arkansas Supreme Court**

**that, after the imposition of Kelley's February 10, 2005 forgery sentence, he was**

**incarcerated first in the ADC "on the forgery [sentence] alone" and, after serving**

**approximately nine months of that sentence, was erroneously paroled to the BOP**

**to begin serving his federal sentence, because the ADC's records department had**

**failed to note Kelley's five-year terroristic act sentence.[12] Finally, she should be**

**prepared to explain whether she reviewed page 4 of Exhibit J to Respondent's**

**Motion to Dismiss and, if not, why she failed to review that document and the**

**much different statement of facts contained in Respondent's Motion to Dismiss**

---

department reviewed *any* of Kelley's ADC records to confirm those facts. Had they done so, they would have discovered that *no such documents existed*, which could mean only one thing: *Kelley was never incarcerated in the ADC for a single day before he began serving his federal sentence.*

[12]At the time his state sentences were imposed, Kelley had a prior conviction for second-degree murder, a "violent felony offense" under Ark. Code Ann. § 5-4-501(d)(2)(A)(ii). Under Ark. Code Ann. § 16-93-609(b), this meant he was *not* entitled to be paroled on his September 24, 2004 sentence for committing a terroristic act, another "violent felony offense." *Id.* § 5-4-501(d)(2)(A)(vii). (*See* Resp't Ex. E, at 4-5; Resp't Ex. J, at ADD28, ADD33.) However, because forgery is *not* a "violent felony offense," Kelley was eligible to be paroled on that sentence.

All of these facts would be relevant only if Kelley had been incarcerated *first* in the ADC, on his forgery sentence, and then was mistakenly paroled to the BOP to begin serving his federal sentence, based on the ADC's records department being unaware of Kelley's terroristic act sentence. *Of course, because none of those facts are true, all of this is utterly irrelevant.*

filed in the federal habeas action on August 13, 2008.

    2.    <u>Things Kelley's Counsel Should Be Prepared to Explain</u>.

Kelley's counsel should be prepared to explain why Kelley failed to object to these untrue facts and let the Jefferson County Circuit Court know the *following* true facts: (1) after his February 10, 2005 sentencing on his forgery conviction, he remained in the PCDC until March 2, 2005, when he was transferred to the BOP to begin serving his federal sentence; and (2) as of September 8, 2009, the date Respondent filed his Response to Kelley's Petition for Writ of Mandamus, Kelley had been incarcerated continuously in the BOP and had not served a single day in the ADC.

Kelley's counsel should also be prepared to explain why, after being retained to represent Kelley on his appeal to the Arkansas Supreme Court, *they independently failed to develop the crucially important and readily available true facts about the order in which Kelley had served his federal and state sentences.*

In their Appellant's Brief, they *explicitly acknowledged* the accuracy of Respondent's chronology of events surrounding the order in which Kelley had served his state and federal sentences. (Resp't Ex. J, at ARG15.) Kelley's counsel should be prepared to explain in detail the full extent of their independent investigation of those facts *before* they acknowledged the accuracy of a

chronology of events that was *completely untrue*.

Kelley's counsel should be prepared to explain why, after they provided Kelley with a copy of Appellant's Brief, he failed to set the record straight about the true facts establishing that he was serving his federal sentence first and, as of the date the Appellant's Brief was filed, he had never served a single day in the ADC.

Finally, Kelley's counsel should be prepared to explain why, in the "Statement of the Case" section of Appellant's Brief, they misrepresented to the Arkansas Supreme Court *the same untrue facts* about the order in which Kelley had served his state and federal sentences contained in Respondent's Response to Kelley's *pro se* Petition for Writ of Mandamus filed in Jefferson County Circuit Court. (Resp't Ex. J, at SOC1-3.)

D.      The Arkansas Supreme Court's March 1, 2012 Decision.

On March 1, 2012, the Arkansas Supreme Court entered its decision granting Kelley's request for mandamus relief based on its conclusion that, to the extent Judge Langston had ordered Kelley's September 24, 2004 terroristic act sentence to be served *consecutive* to his yet to be imposed federal sentence, he had acted without authority and the consecutive aspect of that sentence was *void*. Because Kelley's terroristic act sentence was now silent as to how it ran with regard to his federal

sentence, Ark. Code Ann. § 5-4-403 required it to run *concurrently* with the federal sentence, as of January 19, 2005, the date the federal sentence was imposed.

The Arkansas Supreme Court then gave the ADC instructions on how to calculate and credit approximately nine months of time Kelley had purportedly served in the ADC on his forgery sentence against his terroristic act sentence, which the ADC allegedly did not know about at the time it mistakenly paroled Kelley to the BOP to begin serving his federal sentence. *All of the Arkansas Supreme Court's sentence calculation instructions to the ADC were based on patently untrue facts that counsel for both sides had misrepresented to the Court.*

E.    Respondent's March 19, 2012 Petition for Rehearing.

On March 19, 2012, Respondent's counsel filed a Petition for Rehearing (Resp't Ex. M), in which she *admitted* making the following material misrepresentations of fact about the order in which Kelley had served his state and federal sentences:

> Respondent's counsel "mistakenly believed that Appellant had served time in the ADC [before he began serving his federal sentence]." (*Id.* at 1.)

> "[T]he State is now aware that Appellant has served no time in the ADC for his State convictions [before he began serving his federal sentence]." (*Id.* at 3.)

> "The documentation from the ADC evincing Appellant's entry into ADC custody and serving his State sentence via a discharge date for the forgery sentence ... indicates a mistake of fact by the ADC, which was misinterpreted by all parties involved." (*Id.* at 4.)

No explanation is given as to how this mistake happened; the specific ADC documents Respondent relied on to support these untrue facts; or the names of "all parties" who were involved in "misinterpreting" those ADC documents.[13]

**During the June 23, 2014 hearing, Respondent's counsel must provide the Court with copies of the specific "documentation from the ADC evincing [Kelley's] entry into ADC custody and serving his state sentence via a discharge date for the forgery sentence" and be prepared to identify the specific facts in that documentation which supported the misstatements of fact she had made earlier to the Jefferson County Circuit Court and the Arkansas Supreme Court about the order in which Kelley had purportedly served his state and federal**

---

[13]The Petition for Rehearing also makes a new, conclusory and legally unsupportable argument that, based on these "new facts," all of Kelley's time in the BOP should be deemed "dead time," *i.e.*, *none* of that time should be credited against either of his five-year state sentences, which now *unquestionably* ran concurrently with each other and with the federal sentence. On April 19, 2012, the Court summarily denied Respondent's Petition for Rehearing, without discussion, and implicitly *rejected* this dead-time argument. (Resp't Ex. N.)

Undeterred, Respondent reasserted the dead-time argument in a Response to Kelley's Petition for Writ of Mandamus or Alternative Relief for Enforcement of Supreme Court's Order, filed on October 8, 2012. (Resp't Ex. P.) In a *per curiam* Order, entered on October 25, 2012, the Arkansas Supreme Court made it clear that it had considered and *explicitly rejected* Respondent's "dead time" argument:

> The ADC asserts that Kelley "has served no time on his State sentences" and that time served [in the BOP] is "dead time." This specific argument was presented by the ADC in its petition for rehearing in *Kelley* and rejected by this Court.

*Kelley v. Hobbs*, 2012 Ark. 402, at *2.

**sentences.**

F.     Kelley's Response to Respondent's Petition for Rehearing.

Based on the Arkansas Supreme Court's March 1, 2012 decision, these new facts meant that, as of February 10, 2005, both of Kelley's five-year state sentences began to run concurrently with each other and with the eight-year federal sentence that Kelley began serving on January 19, 2005. Under those new facts, Kelley would have flattened and fully discharged both of his state sentences no later than February 10, 2010. *Thus, these new facts provided Kelley with the basis for a new legal argument that, upon his release from the BOP in 2012, he would be a free man.*

It was *vitally important* for Kelley's counsel to make these new facts part of the appellate record in the mandamus proceeding before the Arkansas Supreme Court. Otherwise, Kelley would be barred from making the *new argument* that, based on these *new facts*, he had *fully discharged* both of his concurrent five-year state sentences by simultaneously serving that time in federal custody, between February 10, 2005 and February 10, 2010. To accomplish this, Kelley *was required* to either join in Respondent's Petition for Rehearing or file his own Petition for Rehearing. Had he done either of those things, the Arkansas Supreme Court would have had little choice except to *grant* the joint request for rehearing so that it could consider these new and much different facts, and how they impacted the amount of time that should

now be credited against Kelley's state sentences.

Instead of doing what was required to be done to get these new facts before the Arkansas Supreme Court, Kelley's counsel filed a Response[14] that argued the Court should *dismiss* Respondent's Petition for Rehearing because: (1) "The rehearing petition is based on facts that the Attorney General failed to develop at the circuit court and which are not reflected in the record on appeal," (Ex. M, at 1); (2) Respondent is requesting the Court to "repudiate [the facts in] the record [about the order in which Kelley had served his state and federal sentences] in favor of the hearsay referenced in the petition," (*Id.* at 4); (3) Respondent's counsel "failed to exercise due diligence in asserting error in the record undermining the credibility of the arguments before the Court, (*Id.*); and (4) "The Attorney General's petition abuses appellate process," (*Id.* at 5).

Kelley's counsel then took the extraordinary step of arguing that *the untrue facts in the record* (which Respondent's counsel had now *admitted* were untrue) *were in fact true*: "The record unequivocally shows that [Kelley] was transferred from the Pulaski County Detention Facility to ADC following his conviction on the forgery charge in Division 2 of Pulaski County Circuit Court. (ADD. 24/R. 23). ADC then notified [Kelley] of his discharge date. (ADD. 25/R. 24)." (*Id.* at 7.)

---

[14]A copy of Kelley's Response to Petition for Rehearing, marked Ex. M, is attached to this Order.

Of course, *none* of the documents cited by Kelley's counsel establish that he "was transferred from the [PCDC] to ADC following his [forgery] conviction." (*See* Ex. E, F & G to this Order.) Furthermore, *before making that argument*, Kelley's counsel appears to have *done nothing* to confirm with Respondent's counsel or with their own client whether those new facts were true and obtained documents from the ADC or BOP to confirm the accuracy of those facts. Kelley's counsel concluded their Response by requesting the Arkansas Supreme Court to "*deny* the Attorney General's petition for rehearing in this cause." (Ex. M, at 10) (emphasis added).

On April 19, 2012, the Arkansas Supreme Court Clerk sent the attorneys a letter notifying them that the Court had issued an Order stating that: "Appellees' petition for rehearing is denied." (Resp't Ex. N.) Thus, Kelley had successfully *defeated* Respondent's attempt to get the true facts about the order in which Kelley had served his federal and state sentences before the Arkansas Supreme Court and lost the opportunity to make the new argument that, under those true facts, Kelley had fully discharged both of his concurrent state sentences during his incarceration in the BOP.

**Kelley's counsel should be prepared to explain the investigation they undertook to determine if the "true facts" contained in Respondent's Petition for Rehearing were in fact true. Did they talk to Respondent's counsel to determine the documents that she was relying on to corroborate these "new facts"? Did they**

place a telephone call or write a letter to Kelley, who was clearly in a position to know if those new facts were true, and ask him to corroborate the accuracy of the facts? Did they contact the United States Marshals Service or the BOP to obtain the documents to confirm the accuracy of these "new facts"?

Kelley's counsel should also be prepared to explain the *specific facts* that they were relying on to argue, contrary to Respondent's assertion in the Petition for Rehearing, that these new facts were *not true*.

Finally, Kelley's counsel should be prepared to explain why they believed it was in Kelley's best interest for these new facts *not* to be made part of the appellate record so that they could preserve and make the new legal argument on rehearing that Kelley had unquestionably discharged both of his concurrent five-year state sentences no later than February 10, 2010?

G.     November 29, 2012 Compliance Hearing Before the Arkansas Supreme Court.

Counsel for both sides should carefully review the transcript of the November 29, 2012 compliance hearing before the Arkansas Supreme Court[15] and be prepared to answer the Court's questions arising from what took place

---

[15]As directed by this Court, Respondent has provided a transcript of the November 29, 2012 hearing before the Arkansas Supreme Court. (Resp't Ex. W, attached to *Doc. #16*.)

**during that hearing.**

IT IS SO ORDERED this 5th day of June, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 6 2004

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# United States District Court

Eastern   District of ___Arkansas___

**UNITED STATES OF AMERICA**

v.

JOE LEWIS KELLY, JR.

## WARRANT FOR ARREST

Case Number: **4:04CR00066 SWW**

**To: The United States Marshal
and any Authorized United States Officer**

YOU ARE HEREBY COMMANDED to arrest <u>JOE LEWIS KELLY, JR.</u> and bring him or her

forthwith to the nearest magistrate judge to answer a(n)

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of
Court
 ☐ Probation
Violation
Petition
 ☐ Supervised Release
Violation Petition
 ☐ Violation
Notice

charging him or her with (brief description of offense)

Possession of firearm by convicted person

As better described in the attached copy of the indictment.

In violation of Title <u>18</u> United States Code, Section(s) <u>922(g)(1)</u>

<u>JAMES W. McCORMACK</u>
Name of Issuing Officer

_____
Signature of Issuing Officer

<u>CLERK, EASTERN DISTRICT OF ARKANSAS</u>
Title of Issuing Officer

<u>March 17, 2004 at Little Rock, Arkansas</u>
Date and Location

---

## RETURN

This warrant was received and executed with the arrest of the above named defendant at:

| Date Received<br>**04/05/2004** | Name and Title of Arresting Officer | Signature of Arresting Officer |
|---|---|---|
| Date of Arrest<br>**04/05/2004** | Glen Jordan/ATF Special Agent | W. Glen Jordan |

**EXHIBIT**

**A**

PENGAD 800-631-6989

9

AO 472 (Rev. 3/86) Order of Detention Pending Trial

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

# United States District Court

APR 12 2004

### EASTERN DISTRICT OF ARKANSAS

JAMES W. McCORMACK, CLERK

UNITED STATES OF AMERICA

V.

By: _____ DEP CLERK

ORDER OF DETENTION PENDING TRIAL

JOE LEWIS KELLY, JR.
*Defendant*

Case Number: 4:04CR00066 SWW

In accordance with the Bail Reform Act, 18 U.S.C. §3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

### Part I—Findings of Fact

☐ (1)  The defendant is charged with an offense described in 18 U.S.C. §3142(f)( 1 ) and has been convicted of a (federal offense) (state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed) that is
☐ · a crime of violence as defined in 18 U.S.C. §3156(a)(4).
☐ an offense for which the maximum sentence is life imprisonment or death.
☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____ .

☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. §3142(f)(1XA)-(C), or comparable state or local offenses.
☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
☐ (3) A period of not more than five years has elapsed since the (date of conviction) (release of the defendant from imprisonment) for the offense described in finding (1).
☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an)other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

☐ (1) There is probable cause to believe that the defendant has committed an offense
☐ for which a maximum term of imprisonment of ten years or more is prescribed in _____
☐ under 18 U.S.C. §924(c).
☐ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

☐ (1) There is a serious risk that the defendant will not appear.
☒ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

_____
_____
_____
_____
_____

### Part II – Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by (clear and convincing evidence) (a preponderance of the evidence) that

Government has proven by clear and convincing evidence that no conditions or combination of conditions can reasonably assure the safety of any person or the community. DF has an extensive criminal history for violence, including 2 murda protection orders have been obtained by DF's former girlfriend and his 2 children while on supervised release. Then is such evidence DF may have fired a hand gun into a car driven by his former girlfriend and 2 children. DF is charged with possessing ammunition while on supervised release.

### Part III – Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

Dated:   April 12, 2004

_____
Signature of Judicial Officer

J. Thomas Ray, U. S. Magistrate Judge
*Name and Title of Judicial Officer*

* linsert as applicable: (a) Controlled Substances Act (21 U.S.C. §801 *et seq.*; (b) Controlled Substances Import and Export Act (21 U.S.C.

ENTERED ON THE DOCKET IN ACCORDANCE
WITH RULE 55, FRCrP, ON 4-13-2004
BY _____

**EXHIBIT**
**B**

PENGAD 800-631-6989

United States Marshals Service - LIMITED OFFICIAL USE

Prepared on: 04/21/2014



| Name | Admit Date | Release Date | # Days | Remark | Last Update |
|------|-----------|--------------|--------|--------|-------------|
| Pulaski Co Detn Fac | 04/05/2004 | 04/14/2004 | 9 | | 04/05/2004 |
| Tensa Parish Detn | 04/14/2004 | 05/11/2004 | 27 | STATE WRIT TO PULASKI CO. | 05/11/2004 |
| Pulaski Co Detn Fac | 09/20/2004 | 09/22/2004 | 2 | READMIT FOR TRIAL | 09/21/2004 |
| Pulaski Co Detn Fac | 10/06/2004 | 10/13/2004 | 7 | READMIT FROM STATE WRIT | 10/06/2004 |
| Tensa Parish Detn | 10/13/2004 | 11/18/2004 | 36 | | 10/14/2004 |
| West Carroll Detn Ctr | 11/18/2004 | 12/01/2004 | 13 | STATE WRIT TO PULASKI | 12/01/2004 |
| West Tenn Det Fac | 03/02/2005 | 04/04/2005 | 33 | AIRLIFT FFT USP BEAUMONT,TX | 04/19/2005 |



**Limited Official Use**
This Information is the Property of the U.S. Marshals Service and Shall Not be Publicly Released or Disseminated Without U.S. Marshals Service Authority.

```
   OKLAM  540*23 *          SENTENCE MONITORING        *      04-21-2014
PAGE 001         *          COMPUTATION DATA           *      13:31:34
                            AS OF 07-12-2012
```

REGNO..: 21350-009 NAME: KELLY, JOE LEWIS JR

```
FBI NO..........: 20422EA8          DATE OF BIRTH: 07-29-1963  AGE:  50
ARS1............: LEE/GCT REL
UNIT............:                    QUARTERS.....:
DETAINERS.......: YES                NOTIFICATIONS: NO
```

HOME DETENTION ELIGIBILITY DATE: 01-12-2012

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  07-12-2012 VIA GCT REL

REMARKS........: RELEASE AUDIT COMPLETED ON 06-17-2011 BY DSCC

-----------------------PRIOR JUDGMENT/WARRANT NO: 020 ----------------------

```
COURT OF JURISDICTION...........: ARKANSAS, EASTERN DISTRICT
DOCKET NUMBER...................: 4:04CR00066-001SWW
JUDGE...........................: WRIGHT
DATE SENTENCED/PROBATION IMPOSED: 01-19-2005
DATE COMMITTED..................: 04-10-2005
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

|  | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $100.00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 136
OFF/CHG: FELON IN POSSESSION OF AMMUNITION
        T18USC922(G)(1)

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:   96 MONTHS
TERM OF SUPERVISION............:    3 YEARS
RELATIONSHIP OF THIS OBLIGATION
 TO OTHERS FOR THE OFFENDER....: CS TO 030-010
DATE OF OFFENSE................: 11-09-2003
```

G0002       MORE PAGES TO FOLLOW . . .

EXHIBIT

D

PENGAD 800-631-6989

```
   OKLAM  540*23 *          SENTENCE MONITORING          *      04-21-2014
PAGE 003        *          COMPUTATION DATA             *      13:31:34
                           AS OF 07-12-2012
```

REGNO..: 21350-009 NAME: KELLY, JOE LEWIS JR

--------------------------PRIOR COMPUTATION NO: 020 --------------------------

COMPUTATION 020 WAS LAST UPDATED ON 06-17-2011 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-17-2011 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:  020 010, 030 010

```
DATE COMPUTATION BEGAN..........: 01-19-2005
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  114 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    9 YEARS     6 MONTHS
AGGREGATED TERM OF SUPERVISION..:    3 YEARS
EARLIEST DATE OF OFFENSE........: 02-10-1997
```

```
JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    01-19-2004    01-19-2004
                                    04-05-2004    01-18-2005
```

```
TOTAL PRIOR CREDIT TIME.........: 290
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 446
TOTAL GCT EARNED................: 446
STATUTORY RELEASE DATE PROJECTED: 07-12-2012
EXPIRATION FULL TERM DATE.......: 10-01-2013
TIME SERVED.....................:    8 YEARS     3 MONTHS    10 DAYS
PERCENTAGE OF FULL TERM SERVED..: 87.1
```

```
ACTUAL SATISFACTION DATE........: 07-12-2012
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: LEE
ACTUAL SATISFACTION KEYED BY....: VLB
```

```
DAYS REMAINING..................: 446
FINAL PUBLIC LAW DAYS...........: 0
```

REMARKS.......: 40D DIS TAKEN 11-20-09.MAV. 05-13-10 - DHO AWARDED BACK 40DYS
                DIS. C/JLC

G0002        MORE PAGES TO FOLLOW . . .

Case 5:13-cv-00161-JLH   Document 17   Filed 06/05/14   Page 37 of 56
Case 5:13-cv-00161-JLH-JTR   Document 7-11   Filed 06/19/13   Page 61 of 125
130wC

| Office of the Pulaski County Sheriff | Official Memorandum |
|---|---|
| | Pulaski County Detention Facility |

To: *Kelley, Joe*

BOOK-IN # *21959-04*

From: **COURT LIAISONS OFFICE**

LOCATION *H-4031*

Re: **PERSONAL PROPERTY**

Date: *2-10-05*

Due to your recent conviction to the Arkansas Department of Correction you are now required to release all personal property to a family member or a friend. Have a family member or your friend go to visitation and ask that your personal property be released to them. Inmate services can assist you with this task. You must do this prior to your departure to the Arkansas Department of Corrections.

P.S. Your paper work is being processed by the prosecutors office. Once it is completed you will be placed on the waiting list.

ADD--24

EXHIBIT

E





P.O. Box 8707
Pine Bluff, Arkansas 71611-8707
Phone: (870) 267-6999
FAX: (870) 267-6616
www.state.ar.us/doc

*honor and integrity in public service*

## Arkansas Department of Correction

TO:        Joe Kelley, #21350-009, ADC #84474

FROM:      Roy Agee, Classification Administrator

RE:        Your Letter

DATE:      July 20, 2007

Your discharge date is 9/18/2009 (see enclosed time card).

RA:mj

Enclosure (1)

cc: File

ADD--25

EXHIBIT

F

PENGAD 800-631-6989



**AR DOC**
**REPORT NO. OTCR118**

**ARKANSAS DEPARTMENT OF CORRECTION**
**TIME COMPUTATION CARD**

PAGE:   1  of   1
PROCESSED: 07/20/2007  08:18
REQUESTOR: Miriam Ellington

---

**INMATE NAME:**   Kelley, Joe L Jr                           **ADC #:** 084474A

**LOCATION:**   AR CC Sentences TOS          **HOUSING:** UNKUNK     **CLASS:** I-C          **AS OF:** 04/25/2006

You have been committed to the ADC to serve the following sentences. The release dates listed below are only a projection and include all good time which can be earned based on your current class. If all projected good time is not earned, these release dates will change.

| CMT. | OFFENSE | FEL CLS | DOCKET NUMBER | COUNTY NAME | TOTAL SENTENCE YY/MM/DD | | PE/TE | JAIL TIME |
|---|---|---|---|---|---|---|---|---|
| AC-001 | Forgery (2) | C | CR-2004-4380 | Pulaski | 0y 60m 0d | IN | 1/3* | 144 |

**TOTAL SENTENCE LENGTH** 5y 0m 0d

---

**RELEASE DATES:**   **TRANSFER ELIGIBILITY DATE:**   11/16/2005

**DISCHARGE DATE:**   09/18/2009

*Your Discharge Date is*

ADD--26

**EXHIBIT**
**G**

PENGAD 800-631-6989





## Arkansas Department of Correction

To: Inmate Joe Kelley          ADC# 084474

From: Shelli Maroney, Records Supervisor
      Diagnostic Unit

Date: September 11, 2007

Re: Your sentence

After reviewing your institutional file, it was discovered that you have a
5yr sentence out of Pulaski Co on docket 2004-487 that had not been
entered into the system. As you know, this 5ye sentence is
CONSECUTIVE to your Federal time. Therefore, this 5yr sentence will
not begin until the day you are released from the Feds. Also, the charge
of Terroristic Act falls under Act 1805 of 2001 and you are not eligible
for good time or parole on this sentence. I have enclosed a new time
card reflecting this sentence. The detainer that Pulaski Co has on you
will remain in place until you are picked up by Pulaski Co when you are
through serving your Federal Sentence.

cc: Inmate File

ADD--28



EXHIBIT
H

PENGAD 800-631-6989



TCS018B  **Time Computation Recap**  Tuesday September 11, 2007 08:...

| | | |
|---|---|---|
| ADC#: 084474B | Inmate Name: Kelley, Joe L. Jr | |
| ...tion: AR CC Sentences TOS | Housing: UNKUNK  Class: I-C  as of: 04/25/2006 | |
| Total Sentence Length: 5y 0m 0d | TE Date: 06/17/2017  Discharge Date: ▓▓▓▓▓ | |

2 of 2

| Cmt | Offense | Fel. Cls | Docket Number | County | Sentence | PE/TE | Jail Time |
|---|---|---|---|---|---|---|---|
| C-001 | Terroristic Act<br>OD: 11/09/2003 | B | CR-2004-487<br>Work: 09/11/2007 | Pulaski | 0y 60m 0d<br>SBD: 06/18/2012 | 1805 * | 25 |
| D-001 | Forgery (2)<br>OD: 11/29/2003 | C | CR-2004-4380<br>Work: 03/04/2005 | Pulaski | 0y 60m 0d      CC<br>SBD: 09/19/2004 | 1/3* | 144 |

ADD--29

umisapp1.state.ar.us:7002/servlet/...



Joe Kelley #21350-009
United States Penitenjary
P.O. Box 26030
Beaumont, Texas  77720-6030


December 10, 2007


Shelli Maroney, Records Supervisor
Arkansas Department of Correction
Centralized Records
Diagnostic United
P.O. Box 8707
Pine Bluff, Arkansas  71611-8707


        Re : My sentence (Time Computation Recap)


        After reviewing your Memorandum dated September 11, 2007 in reference to your
discovery of a 5yr sentence I have out of Pulaski Co. on docket number 2004-487
that had not been entered into the system.

        Ms. Maroney, it is my understanding that this sentence (docket number
CR-2004-487) is an illegal sentence. Therefore, it is illegal to compute this
sentence. Ms. Maroney, at the very least this computation is a grave error in that
the 5yr sentence for forgery (2) docket number CR-2004-4380 is concurrent to the
5yr sentence for Terroristsc Act docket number CR-2004-0487 (both out of Pulaski Co.
see Judgement and Commitment Orders) it would be illegal to separate the two.

        Ms. Maroney, the only logical solution is to file a writ and bring me back
to the Arkansas Department of Correction to complete both sentences starting
(SBD) 09/19/2004 as stated on my Time Computation Recap for the very first entry.

        Ms. Maroney, according to A.C.A. 16-90-402 (Commitment and Dispositions
forms), "A uniform form is the responsibility of the Department of Correction,
the Arkansas Judicial Council and the Arkansas Prosecuting Attorneys' Association.
The Arkansas Supreme Court adopted Administrative Order Number 8- Forms for
Reporting Case Information in all Arkansas Trial Courts on February 26, 1996.
This Order makes the office of the prosecuting attorney responsible for completion
of Judgement and Commitment...Following submission to the circuit judge for his
signature, these forms are filed with the circuit clerk and a copy forwarded to
the Administrative Office of the Court. A certified copy of a Jugdement and
Commitment is to be delivered by the sheriff with the defendant to the Department
of Correction. Ms. Maroney, since the Judgement and Commitment Order Form provides
the DOC with their legal basis for taking custody of an inmate to deviate from

ADD--31

000030

EXHIBIT
I
PENGAD 800-631-6989



Joe Kelley 84474b                                    Request for Informal Resolution

the basic information within the Judgement and Commitment Order is a violation of
the Privacy Act; which only needs three elements for a claim of damages 1)inaccurate
records, 2) agency intent, and 3) proximate causation. In closing, Ms. Maroney, I
advise you to read both Judgement and Commitment Orders carefully (docket numbers
CR- 2004-4380 and CR -2004-487)

    This letter is intended as a request for Informal Resolution and a speedy
response would be greatly appreciated.

    Failure to respond to this request for Informal Resolution will be construed
as an implicit denial.

    Thanking you in advance.


                                         Sincerly
                                         Joe Kelley #21350-009
                                         ADC# 84474b


ADD--32





**Arkansas Department of Correction**

To:      Inmate Joe Kelley           ADC# 084474

From:    Shelli Maroney, Records Supervisor
         Diagnostic Unit

Date:    January 28, 2008

Re:      Your letter

After I rec'd your certified letter, I called the Feds and inquired about your date of sentence on your Federal time. Your sentence to the Fed's was 1/19/05, which is after you were sentenced by Pulaski Co on docket 2004-487 to run consecutive to your Federal sentence.

I agree that Pulaski Co can not run their sentence consecutive due to you not being sentenced to the Fed time as of that date.

I sent an email and a fax to Centralized Records (Miriam) to please take the steps to correct this. Centralized Records is in the process of asking Pulaski County to amend their sentence to correct their error.

As soon as we receive the amended J&C, they will correct the consecutive sentence and I will send you a letter with a new time card.

I will also notify the necessary offices and persons of this correction when it is made.


cc: Mr. Toney
    Inmate File

ADD--36



EXHIBIT
J





**Arkansas Department of Correction**

To:        Inmate Joe Kelley          ADC# 084474

From:    Shelli Maroney, Records Supervisor
             Diagnostic Unit

Date:    February 8, 2008

Re:       Your consecutive sentence


In reference to your letter stating that the Arkansas Department of
Corrections had an illegal sentence entered on you, we turned all the
information over to the Arkansas Attorney General's Office.
According to Darnisha, Asst Attorney General in the State of Arkansas,
the prior action stands. Your sentence is legal and entered correctly.
You will be required to return to Arkansas to serve your 5 year sentence
in the Arkansas Department of Corrections, that is consecutive to your
Federal sentence.


cc: Mr. Toney
      Inmate File

ADD--37

000036

EXHIBIT
**K**

| AR DOC | STATUS ASSIGNMENT SHEET | PAGE: 1 of 1 |
|---|---|---|
| REPORT NO. IPTR103 - 01 | FROM: 02/10/2005 TO: 07/28/2008 | PROCESSED: 07/28/2008 03:45 PM |
| | | REQUESTOR: Sharon Peyton |

---

ADC#: 084474B  NAME: Kelley, Joe Louis Jr      **STATUS:** Temporary      **CUR LOC:** AR CC Sentences TOS

**BIRTH:** 07/29/1963    **SSN:** 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    DD: 06/17/2017   Absent    **TERM ST.** 3

**SEX:** M   **AGE:** 44   **FBI NO:** 20422EA8    TE: 06/17/2017   **MED:** UN    **CUS:** Medium

**RACE:** Black      **SID NO:** 00516934    **CL:** I-C    **SCORE:** 23    **READ:** 0

**DNA:** NOT REQUIRED 03/04/2005      **WRAT:** 0    **BETA:** 0    **FOOD:** N

---

**NAME:** Kelly, Joe Louis Jr (TRUE)
Kelly, Joe L Jr ("ALIAS")
Kelley, Joe L Jr ("ALIAS")
Cat, Unknown ("ALIAS")

---

**SENTENCING SUMMARY**

03/04/05: 5yrs rec'd 02/10/05 in Pulaski CO on 2004-4380 (hab) with 144 days jtc.
09/11/07: ENTERED A 60 MONTH SENTENCE ON DK 2004-487 FROM PULASKI COUNTY RECEIVED 09/24/04 (FOUND IN JACKET). UNDER ACT 1805 DOES NOT EARN GOOD TIME AND IS NOT ELIGIBLE FOR PAROLE. SUBJECT FALL UNDER ACT 1805 DUE TO A PRIOR MURDER 2ND CHARGE. (25 DAYS JAIL TIME CREDIT) TIME IS RUNNING CONSECUTIVE TO HIS FEDERAL TIME. 2849 DAYS DEAD TIME GIVEN. MS

| DATE | EVENT CATEGORY | EVENT TYPE | FACILITY | DETAILS |
|---|---|---|---|---|
| 09/28/2007 | Board Hearing | Rescind (TE) Screening | AR CC Sentences TOS | Prior(Hearing)Action Stands Transfer To DCC Supervision |
| 04/25/2006 | Credit/Debit | Good Time Class Change | | Class I-C - Parole Board Action |
| 04/25/2006 | Board Hearing | Transfer Screening | AR CC Sentences TOS | Transfer To DCC Supervision |
| 04/21/2005 | Custody | System Generated | Pulaski County Backup List | C2 to C3 |
| 02/24/2005 | Custody | System Generated | Pulaski County Backup List | C2 to C2 |
| 02/10/2005 | Movement | New Commitment | Pulaski Co. Sheriff/ AR CC Sentences TOS | |
| 02/10/2005 | Movement | Transfered OOS (not ISC) | US Pen - Unknown/ AR CC Sentences TOS | AR CC Snt. Other State |
| 02/10/2005 | Credit/Debit | Admission | | Class II - External Movement |
| 02/10/2005 | Custody | System Generated | Pulaski County Backup List | C2 to C3 |
| 04/11/1996 | Board Hearing | Parole Hearing | Cummins Unit | Denied 1 Year |



EXHIBIT

L

ERVED
10- 127

SCCR-10-127

## IN THE ARKANSAS SUPREME COURT



**JOE LOUIS KELLEY,**
*Appellant*

v.

**STATE OF ARKANSAS,**
*Appellee*

### APPELLANT'S RESPONSE TO PETITION FOR REHEARING

TO THE HONORABLE SUPREME COURT OF ARKANSAS:

Appellant, through his attorney of record, Mark F. Hampton, responds to the

Appellee's petition for rehearing challenging the Court's decision entered March

12, 2012.

I.   THE PETITION FOR REHEARING SHOULD BE
DISMISSED BECAUSE IT REFERS TO FACTUAL MATTERS
OUTSIDE THE SCOPE OF THE RECORD ON APPEAL.

1.   The rehearing petition is based on facts that the Attorney General failed to

develop at the circuit court and which are not reflected in the record on appeal.

The State concedes that it erred in arguing in its brief that "Appellant served his

time in the ADC on the forgery alone, was then paroled to the BOP, and is not

pending his return to the ADC to serve his sentence on the terroristic-act

1


EXHIBIT
M

conviction." (Rhrg. Pet. at 3, citing brief, at 2, n. 3). Based on this, the State now argues a new and totally different theory regarding Appellant's incarceration in ADC, citing *LeClere v. State*, 70 Ark. App. 235, 16 S.W.3d 276 (2000).

2.     The extraordinary action ordered in *LeClere*, however, was based on a misrepresentation made by defense counsel in arguing that the record was complete because no hearing on the speedy trial motion was held in the trial court. There, the State was able to show that a hearing had been conducted on the motion, warranting rehearing because the court initially reversed the trial court without considering the evidence adduced at the hearing which had been held.

3.     *LaClere* actually addressed counsel's referral to the Committee on Professional Conduct based on his misrepresentation that no hearing had been conducted on the motion and, thus, there was no deficiency in the abstract filed with the appellate brief. 70 Ark. App. at 236, 16 S.W.3d at 277. The decision on rehearing was not published. *LaClere v. State*, CACR99-294, 2000 WL 562561.

4.     No comparable facts support Appellee's rehearing petition here.   Unlike *LaClere,* the State seeks extraordinary action by this Court in arguing—outside the record on appeal—that its own error warrants rehearing by the Court.

5.     Appellant objects to the State's tactic in circumventing normal appellate practice requiring the parties to produce the necessary record on appeal and

provide an accurate abstract affording the Court a complete opportunity to review the arguments on their merits in light of support from the record developed at trial.

*A.    The State bears sole responsibility for any claimed defect in the record on appeal in this case.*

6.    The trial court record reflects that the Assistant Attorney General now petitioning for rehearing in fact represented Appellees in the trial court in which Appellant's *pro se* petition was filed.  Moreover, counsel obtained an extension of time for filing the State's response based on the representation:  "Undersigned counsel is currently awaiting information that is essential to the preparation of this response.    The additional time is needed in order to assure that adequate consideration will be given to all issues in this petition."  (R/45).

7.    Although counsel then filed a response to the *pro se* petition following the extension, (R/47), the claim made here that Appellant never served any of his state-imposed sentences in ADC was not raised.  The response focused almost entirely on failure to show that the sentences imposed by Pulaski County Circuit Courts were facially invalid.  (R/48-53).

8.    Moreover, counsel did not contest the validity of any of the exhibits offered by Appellant in support of his *pro se* petition.  In effect, the Attorney General conceded that Appellant' supporting exhibits were correct, (R/48-49), including all which referred to the events relating to his service of the forgery sentence in ADC, followed by parole to BOP to serve his federal sentence and anticipated return to

3

ADC to serve the five-year sentence for terroristic act. Counsel now seeks to repudiate the record in favor of the hearsay referenced in the petition.

9.      Here, the Attorney General now claims special dispensation that would be denied to other appellate litigants—the option of claiming its own error in the trial court and on appeal to advance a new claim in its rehearing petition, to rebrief the case contrary to *Cravey v. State*, 1991 WL 223920, *1 (Ark. 1991).

*B.      The Attorney General failed to exercise due diligence in asserting error in the record undermining the credibility of the arguments before the Court.*

10.     Supreme Court Rule 2-3(g) requires the movant to reference the "specific errors of law or fact which the opinion is thought to contain." It does not authorize claims based on purported factual errors outside the record on appeal. Moreover, counsel never moved correct any part of the record relied upon by Appellant in the trial court or on appeal in support of his pro se motion for relief.

11.     Further, this case has been pending for an extended period of time, Appellant's brief  being filed on May 27, 2010; Appellee's brief filed on August 10, 2010; and the reply brief filed on September 10, 2010. The decision was issued March 1, 2012. Yet, Appellee's counsel never sought to correct the record it now claims to be incorrect until the Court ruled for the Appellant. The State was on notice of the nature of the argument that should have warranted review of the proceedings in the court below if there was any basis for concluding that the

4

evidentiary support for Appellant's claims was in error, once it was served with Appellant's brief on appeal.

    *C.*    *The Attorney General's petition abuses appellate process.*

12.    "A rehearing does not encompass a new set of facts, new briefs, and new arguments." *Pannell v. State*, 320 Ark. 390, 391, 897 S.W.2d 552 (1995). Counsel now seeks to advance new facts and new argument in the rehearing petition, an unauthorized departure from the rules of appellate practice, which requires preservation of claims in the trial court, *Hooker v. Farm Plan Corp.*, 331 Ark. 418, 419, 962 S.W.2d 352, 354 (Ark. 1998), and restricts review "to the record as abstracted in the briefs." *Dixon v. State*, 314 Ark. 378, 378-79, 863 S.W.2d 282, 282 (Ark. 2003) (deficient abstract of proceedings precludes appellate review.).

13.    A petition for rehearing "may not substitute for an adequate record in the appellant's brief." *Hagen v. State*, Not Reported in S.W.2d, 1995 WL 311468, *1 (Ark. 1995). Counsel now seeks to argue outside the record on appeal without having developed the record in the trial court or moving to expand the record during the pendency of this appeal and its attempt to use the petition for rehearing to expand the record in support of a new argument is contrary to the Rules and common appellate practice in this Court.

    *D.*    *The Attorney General's reliance on unsubstantiated hearsay in support of its argument for rehearing is improper and would, if permitted, open the door to other parties to disregard the record on appeal and relying on unsworn testimony relating hearsay in order to set aside a decision*

5

*rendered on the record by the Court.*

14.     Here, the Attorney General does not point to any mistake of law or fact made by the Court in deciding this case, as required by Rule 2-3(g), but instead, relies on the *unsworn* statement of the *unidentified party* to whom the Attorney General spoke following issuance of the Court's opinion, the "records supervisor." There is no supporting documentation or affidavit substantiating the information or showing it to be correct.   In fact, reliability cannot be presumed on this point precisely because the issue on appeal was based on a computational error already admitted by ADC included in the record on appeal.  (R/35; see also R/27 and 32, prior correspondence), resulting in the Court's decision ordering relief.

15.     The approach taken the petition for rehearing not only not conflicts with controlling rules of appellate practice, but would serve to permit other litigants to contest appellate decisions by offering unsworn, undocumented conversations relating hearsay as a basis for petitioning for rehearing, an extraordinary departure from the practice of basing appellate decisions on the record preserved in the trial court.  This would convert the appellate rehearing process into a virtual evidentiary free-for-all in which regularity of appellate records could be discarded in order to challenge unfavorable determinations, an approach that should be rejected by the Court in order to preserve orderly appellate process.

II.   THE PETITION SHOULD BE DENIED BECAUSE THE
COURT'S DECISION IS SUPPORTED BY THE RECORD ON
APPEAL.

16.   Even assuming, arguendo, that the new evidence offered by the Attorney

General in support of its petition for rehearing, (Rhrg. Pet. at 4-5, ¶ 5), obtained

from an unidentified "records supervisor"—revelation of unsworn information

disclosed during an apparent unrecorded telephone conversation—may be deemed

properly before the Court, it fails to support the heart of Appellee's claim that

"Appellant has served no time on his State sentences." (Rhrg. Pet. at 5, ¶ 5).

17.   The record unequivocally shows that Appellant was transferred from the

Pulaski County Detention Facility to ADC following his conviction on the forgery

charge in Division 2 of Pulaski County Circuit Court.  (ADD. 24/R. 23).  ADC

then notified Appellant of his discharge date. (ADD. 5/R. 24).

18.   Appellee Maroney later advised Appellant that an ADC computation error

required that the time imposed on his federal sentence was to run consecutive to

the time imposed on the state forgery sentence, and that the sentence on the

terroristic act charge could not then be run consecutively to the federal sentence.

(ADD. 36/R. 35).  Maroney then advised Kelley that the Attorney General had

advised her that the sentence on the terroristic act conviction must be served in

ADC following completion of the federal sentence.  (ADD. 37/R. 36).  The

Attorney General's opinion was incorrect because the circuit court could not

legally impose a sentence to run consecutive to a sentence not yet imposed by another court. *Kelley v. State*, 2012 Ark. 86, *3, 2012 WL 664273, **3. Movant apparently concedes that this Court's holding is correct. (Rhrg. Pet. at 5, ¶ 6, "not[ing]" the Court's conclusion).

19.    Movant argues, however, that Appellant never served any time on his state sentences and that he must now serve the five-year sentence on the terroristic act conviction following his release from federal custody: "The State is now aware that Appellant has served no time in the ADC for his state convictions. . . ." (Rhrg. Pet. at 3, ¶ 2).    Counsel does not claim, however, that Appellant was never incarcerated in ADC prior to being released to federal custody to serve his federal sentence and fails to offer any explanation for its implicit argument that although he was confined in ADC, he was not serving time on a state sentence while incarcerated.  If so, his confinement in ADC would be wholly illegal since it was not based on a state-imposed sentence requiring his imprisonment.

20.    Appellant Kelley assumes that Appellee must now be claiming that he was actually serving his federal sentence while in initial custody of ADC following his conviction on the forgery charge, but that claim is neither supported by any factual record—in contrast, he was received at ADC on the forgery charge, as the record clearly shows, even in the correspondence of Appellee Maroney—or any statement of law, whether statutory or caselaw.  However,  the Court has correctly noted that

8

the issue of whether federal authorities credited Appellant's initial confinement at ADC on the forgery charge toward his federal sentence is "irrelevant" to the issue presented in this case. Proper calculation of the federal sentence is within the jurisdiction of the federal court and BOP, as the Court's notation implicitly confirms. Kelley, 2012 Ark. 86, *4, n. 2; 2012 WL 664273, **3, n. 2.

32.   Appellant Kelley discharged his sentence on the forgery charge; was released to the custody of federal authorities, who then released him upon completion of his sentence obligation in the federal system; and has now been returned to custody of ADC. Because ADC erred in failing to note the terroristic act conviction upon initially receiving Appellant, the Court has properly concluded that he can now only be required to serve the remaining time on his five-year mandatory sentence for terroristic act after crediting him for time previously served on the forgery charge ordered to be served concurrently by Division 2.

33.   The Attorney General's argument is wholly unsupported factually and legally.   Moreover, it rests on the constitutionally impermissible premise that Appellant Kelley could be imprisoned in ADC based on a sentence imposed by the state court, yet be retroactively denied any credit for that time served as a result of its own records-keeping error. This argument, based on ADC's new, erroneous interpretation, not only must fail as a matter of statutory authority and due process protections, but reflects what appear to be substantial inaccuracies in ADC record-

keeping, errors that should not be permitted to impose unauthorized confinement on state court defendants.

Based on the foregoing argument and supporting record entries, Appellant moves the Court deny the Attorney General's petition for rehearing in this cause..

Respectfully submitted this 6th day of April, 2012.

MARK F. HAMPTON
ATTORNEY AT LAW
ARKANSAS BAR NO. 85066
1122 WEST CAPITOL
LITTLE ROCK, AR.  72201
(501) 376-6277
(501) 376-6279 (FAX)
MarkFHampton@aol.com

and

J. THOMAS SULLIVAN
ATTORNEY AT LAW
ARKANSAS BAR NO. 2006019
P.O. BOX 17007
LITTLE ROCK, AR.  72222
(501) 324-9940

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Response to the Appellee's Petition for Rehearing on counsel for the State, the Attorney General of Arkansas, by leaving same with the Clerk of the Court on April 6, 2012.

Mark F. Hampton

10